## Jones *vs* Morehead, &c.

### ERROR TO THE BRACKEN CIRCUIT.

*Partnership. Parol proof. Decrees. Damages.*

JUDGE MARSHALL delivered the opinion of the Court.

CHANCERY.

Case 105.

*May 4.*

The case stated.

In November, 1834, George W. Jones, Thomas More-head, and J. G. Foley, associated themselves by written articles of partnership, under the name of Thos. More-head & Co. for the purpose of carrying on the milling and distilling business at the Rock Spring Mills in Bracken County, under a lease for one year, with a privilege of purchase or renewal within a limited period, which Foley held in his own name, from William Metcalf. Expensive repairs having been made during the first season, the par-ties determined to purchase, and by agreement, the con-veyance of about 400 acres of land was made to Jones and Morehead. During the years 1835 and 1836, large sums, advanced by Jones, were expended under the su-perintendence and chiefly according to the plans of More-head, in renewing and extending the buildings, appara-tus, and fixtures, whereby, and at the cost of sixty or eighty thousand dollars, the establishment seems to have been made one of the most extensive and complete in the western country. In addition to these heavy expenditures large sums were requisite for furnishing the necessary

supplies and materials for carrying on the business on a scale commensurate with the preparations made, and these sums, beyond the proceeds of the business, were also advanced almost entirely by Jones.

Before the summer of 1837, the difficulty of procuring the necessary funds having been severely felt and the prospect of profit, which had induced such vast expenditures, having been greatly diminished or entirely dissipated, the business flagged, the supplies became deficient, the parties began to lose confidence in each other, and mutual crimination and re-crimination seems to have taken place of the cordial and energetic co-operation so essential to the advantageous management of such an establishment. At length, on the 19th of September, 1837, a dissolution of the partnership, which if not necessary seemed inevitable, but which ought to have been brought about either by amicable arrangement or by appeal to the Chancellor, was effected by the act of Jones and Foley alone, who, making the fact known to Morehead by private notice, and to others by public advertisement, took exclusive possession of the establishment, from which Morehead was kept out by force, and which was thenceforth carried on by Jones, and for his exclusive benefit. Morehead protested against these proceedings and set up his claim to remuneration for capital and services, but seems not to have claimed to be any longer a partner. And two days after his forcible expulsion he conveyed his interest in the land and appurtenances, to Nathaniel Foster for the consideration expressed of four thousand dollars.

Before the dissolution the parties had, by written agreement, submitted the books and accounts of the late firm to John Keating, to ascertain the amount received and expended by each, and bound themselves to abide by his award. Keating, after a laborious examination, reported that Jones had, up to the 19th of September, 1837, advanced a sum exceeding $100,000, and had received of the proceeds of the establishment about $40,000, leaving him more than $70,000 in advance, and that Morehead, who had had the principal superintendence of the repairs, buildings, expenditures, and supplies, had advanced, of his own

funds, two thousand six hundred and ninety-nine dollars and ninety-six cents beyond what he had received.

In this condition of things Jones, in 1838, filed his bill against Morehead, Foley, &c. alledging that by the articles of association, which he charges to be in possession of Morehead, they, Morehead and Jones, were to advance the capital equally, and that after they were remunerated from the establishment Foley and themselves were to be equal partners, and stating the amount of his advances, he prays that an account be taken and that the premises should be sold for his remuneration; and charging that the conveyance to Foster was made to defraud him, he prays that it may be set aside. Morehead in answer, denies that the articles of partnership are in his possession or control, and charges that they were delivered to Jones for safe-keeping. He also denies that he was to advance any of the capital, and alledges that Jones was to advance the whole, and that he and Foley were to contribute their services alone; that Jones was to receive all the proceeds until remunerated, after which the three were to be equally interested, and that until that time he and Foley were to withdraw from the business nothing beyond their personal expenses. He denies fraud in the conveyance to Foster, and produces a re-conveyance. And setting up, by way of cross bill, the award of Keating, he insists upon his claim for the amount of his advances as therein stated, which he says is correct, and prays a decree for this sum, and also for damages for his expulsion from the firm, and for the loss of the advantages promised by the terms of association, and that the land and appurtenances might be sold, &c.

Jones, in answer, denies the allegation in regard to his possession of the articles of association, and also in regard to its terms; repeats the statements of his bill on this subject, and goes into many details, as Morehead also had done, which it is unnecessary to repeat.

A commissioner was appointed to state the accounts, and his voluminous report, together with an immense mass of depositions containing much useless matter, has swelled the record to the unusual volume of about 800 pages. The report of the commissioner agrees very near-

ly with that of Keating, in stating the sums advanced by Jones and Morehead respectively, and shows that Jones had paid, after the dissolution, about $14,000 of debts created before that time, and not included in Keating's award. It also shows that the value of the partnership property taken possession of by Jones, including the land and buildings, estimated at the time of the dissolution, exceeded $80,000, and was nearly equal to the aggregate advances of Jones and Morehead.

On the hearing the Court decreed that Jones should pay to Morehead the sum of $2,699 96, with interest from the date of Keating's award, as the amount of his advances; that the partnership property should be sold and the proceeds appropriated, first to the payment of this sum, decreed to Morehead, and the residue to the remuneration of Jones, who was decreed to pay the entire costs of Morehead. And the case, as to the damages claimed by Morehead, having been reserved, Jones was afterwards decreed to pay him one thousand dollars on that account. From this last decree Jones appealed, and to the first he prosecutes a writ of error. And the land of the late firm having been sold under the first decree, he moved to quash the sale bond and the execution thereon, and prosecutes a writ of error to reverse the order overruling that motion. But as the sale took place before the decree under which it was made was suspended or superceded by appeal or writ of error, and no defect is shown either in the bond or the execution, the motion was properly overruled and the order and decree on that subject is affirmed, with the costs of that writ of error.

*Decree of the Circuit C't and the attitude of the case here.*

With regard to the principal decree, there being no doubt that the sum decreed was advanced by Morehead out of his own resources, the only question is, whether he is entitled to stand as a creditor of the firm or of Jones, and to be paid his whole demand before Jones receives any part of his capital, or whether the sum advanced by him is to be considered as so much capital for the re-payment of which he has no prior claim.

These questions would best be answered by the articles of partnership. And in the absence of that instru-

ment the inquiry, in whose possession it should be deemed to be, has been urged as a means of solving the question as to its terms, on the ground that the party who, in a case depending on the terms of the agreement, withholds or secretes it, contrary to his solemn denials and charges on oath, affords thereby the strongest ground for inferring that the terms, if not such as his adversary alledges, are at least different from what he himself alledges them to be. The force of this inference might be admitted: but in the present case the solution of this subordinate enquiry is even more difficult than that of the principal question itself. For though there are a few circumstances relating to the custody of the instrument which are calculated to produce an impression as to the person who had, or ought to have had the control of the paper at the time of the dissolution, and of the filing of the bill, these circumstances are too indecisive in themselves and too nearly balanced by other considerations, of an opposite tendency, to furnish satisfactory grounds for a conclusion directly contrary to the positive denials of either party as to a matter which, if the conclusions were correct, he must be presumed to have known. And as this question is a subordinate one, and the record furnishes other means of ascertaining the terms of the partnership, we do not feel compelled to place the ascertainment of those terms exclusively or mainly upon the question of fraudulent suppression, which cannot itself be satisfactorily determined.

The oath of each party, to the effect that the written agreement is not in his possession or control, and has not been destroyed or secreted by him, but is or ought to be in possession of the other party, who is called on to produce it, must, in the absence of any testimony sufficient to fix the fraudulent suppression on either, be held sufficient to authorize the admission of parol evidence of the contents of the instrument, which indeed does not seem to have been objected to. This evidence consists of the detail, by numerous witnesses, of the statements of each of the parties, and especially of Jones, that the terms of the partnership were, with regard to the advance of capital, substantially as alledged by Morehead in his

*Where an article of partnership was charged by each partner to have been in the possession of the other, and positively denied by each—held that parol proof was admissible to prove the contents as a lost instrument.*

answer and cross bill; and one witness states that he de-
rives his knowledge or impression that such were its
terms, from having heard the agreement read by More-
head, on the day of its execution by himself and Jones,
in Nov. 1834, and that in numerous conversations with
Jones, with whom he was intimate, this impression was
tacitly admitted to be correct, and was the basis of all that
was said on the subject, until after the difficulties had oc-
curred in the firm and a dissolution was talked of, Jones,
for the first time, said that Morehead was bound to furnish
the capital equally with himself. No witness, (save one
whose statement is contradicted by his previous conver-
sations, and whose character and credibility are directly
impeached,) states that Morehead was, by the terms of
the agreement, to furnish any portion of the capital; and
neither in the numerous applications which were made
to Jones for money, by creditors of the firm, or by mes-
sengers from Morehead, nor on any other occasion, except
that just referred to, was Jones, though he often spoke of
having to furnish the capital himself, and complained of
the difficulty of raising money, ever heard to intimate
that Morehead should be called on or was bound to fur-
nish any. We do not, however, think it necessary to
pursue in detail, the circumstances which tend to corob-
orate the direct testimony as to the contents of the article
of agreement, nor those which have an opposite tendency,
but will only say with regard to one of the last, viz: the
fact that Morehead did make advances to the amount
shown by the report—that considering that he was the
principal superintendent of the active business of the
company, in making repairs, erecting buildings, purchas-
ing supplies, making contracts relative to all these mat-
ters, and disbursing the money of the firm, and that he
was called on for payment on contracts made by himself,
when no funds could be got from Jones, and considering
that his feelings were deeply engaged in the successful
progress of the undertaking, not only on the score of his
interest in the prospective results, but also because the
establishment was, in a great measure, the creature of
his own plans, and had grown up under his own exertions,
and was the object of his hope and ambition, it is not

strange that he should, from time to time, during the course of nearly three years, have voluntarily made advances from his own funds, looking to it for remuneration. We think, therefore, the mere fact of his having made the advances, has but little, if any tendency to prove that he was bound to do so.

Without attempting further to explain or reconcile the apparently discrepant circumstances in the case, we are of opinion, upon consideration of all the evidence and all the circumstances, including those relating to the custody of the article of association, that the preponderance is in favor of the conclusion, that Jones was to furnish all the capital, and consequently, that Morehead is not only not bound to contribute to make up the excess of his advances, but that he is entitled to priority over Jones, in obtaining from the property of the firm, a reimbursement of his own advances. And although this conclusion, as to the facts, is doubtful, and even if it were more doubtful than it is, still as the partnership was dissolved without the concurrence of Morehead, and against his will at the time, and he was expelled from the partnership property of which Jones, for his own exclusive benefit, took and held possession without even causing an inventory or estimate of value to be made at the time, and as the property thus appropriated, appears by subsequent estimates, to have been in value not far below the advances both of Jones and Morehead, we should hesitate to reverse a decree which, under such circumstances, has given the priority to Morehead, and to make him bear the loss which may have affected the value of the property, from deterioration, or waste, or depreciation of value, or a change of times, since the dissolution.

The decree therefore, so far as it ascertains the amount of the advances made by Morehead, and gives him a preference over Jones in the reimbursement thereof, out of the partnership property, is deemed correct. And although, if the decree for a sale of the land had been brought up, or superceded before the sale, it might have been reversed, because Charles S. Clarkson was not made a party, the land having been mortgaged to indemnify him against loss by his indorsements on various notes

One partner who was bound to make all the advances to bring the establishment into operation, expelling the other partner, is properly held accountable for indemnity out of the partnership property for any advances made for the benefit of the concern.

and bills of Jones or of Morehead, or both, on which money had been raised for partnership purposes, yet as Clarkson has no interest in the sum decreed, and as the reversal of the decree would not affect the sale, and the purchaser must hold subject to the mortgage, if indeed there be any subsisting interest under the mortgage, which is doubtful, the omission of Clarkson as a party, is not, according to the practice of the Court, a sufficient ground of reversal, and the decree, to the extent indicated, is affirmed. But as the conveyance by Morehead to Foster, furnished to Jones some ground for going into equity, and as a large portion of the costs upon Morehead's cross bill were occasioned by his attempt to sustain his claim for damages therein claimed, and to which, though decreed to him, he was not, for reasons presently to be stated, properly entitled, it was erroneous to decree the whole costs of the suit, upon the original and cross bill, to be paid by Jones.

With regard to the decree for one thousand dollars, to be paid by Jones to Morehead, and from which Jones appealed, we are of opinion, that it was erroneous, because, conceding by the articles of agreement, as stated by Morehead, he had the contingent right of participating equally with Jones and Foley in the profits of the establishment, after the capital expended should be reimbursed, and that a deprivation of that right by the act of Jones, or of Jones and Foley, would entitle him to damages for a breach of the agreement, such damages should only be equivalent to the value of the right itself, and we are of opinion, that upon the evidence in the record, there is neither proof nor prospective probability that the capital expended will ever be reimbursed by the profits, or that it would have been if the firm had not been dissolved. And under these circumstances, Morehead cannot be regarded as having lost any thing, either on the ground of being cut off from this contingent advantage, or by the loss of the implied right of eating and sleeping at the expense of the establishment, so long as it should be carried on, in consideration of his whole time and exertions being devoted to it. Besides, a dissolution, as already intimated, was inevitable if not necessary. It

was felt, and in effect, acknowledged to be so by More-head himself. It had been the subject of propositions and considerations between the parties ; and Morehead seems to have been willing that it should take place as soon as the accounts of the firm should be examined and settled by the parties, so as to free him from any imputation of an improper use of the funds advanced by Jones. And after the dissolution was declared by Jones and Foley, and he was expelled from the property, he in effect, affirmed the dissolution by conveying his interest to Foster, and by avowing the intended assertion of his claim to reimbursement and damages. Although, therefore, the acts of Jones and Foley were wrongs to him—and although he might have recovered possession by eject-ment, if he had not conveyed his title, and might, in the proper action, have recovered damages for any violence of his person, we do not perceive that he has any real ground for complaining of the dissolution itself, except as to the manner in which it was declared and effectuated. And for these he could be entitled to no damages, or at most, to nominal damages only, in an action on the contract. The Chancellor had no right to give damages, either for the force, or for the injury to Morehead's feelings.

The decree for the sum of $1000 is therefore reversed, and the cause is remanded, with directions to dismiss the cross bill, as to the claim of damages for the alledged breach of the articles of agreement, and the consequent loss to Morehead—and to the decree that the entire costs upon the original and cross bills, except the costs of the commissioner's report, be paid equally by Jones and Morehead. And as there is a reversal on the appeal, and a partial reversal on the writ of error to the principal decree, both coming up on the same record, Morehead should pay three-fourths of the costs of said appeal and writ of error.

*Where the suit is necessary to wind up the part-nership, it is proper to divide the costs.—*

With respect to the allowance to the commissioner, it appears that before the cause was finally disposed of between the parties, an order was made, allowing the commissioner $600 for his services, and decreeing that Jones should pay the same to him. And upon its after-

*—And the Chan-cellor may en-force his decree for compensa-tion to a com-missioner, by at-tachment or by execution, and*

JONES
vs
MOREHEAD &c.
especially if the
party be a non-
resident.

wards appearing that said Jones, though served with a copy of the order, had failed to pay the said sum to the commissioner, the Court, because Jones was not a resident of Kentucky, but of Ohio, (which also appears in the cause,) instead of enforcing the order by attachment, directed an execution to issue against his estate. To reverse this proceeding, Jones prosecutes a writ of error against Morehead and Payne, the commissioner, complaining that the allowance is exorbitant; that the Court erred in directing an execution for its enforcement, instead of proceeding by way of attachment, and that the whole amount should not have been charged against him. The amount allowed is indeed unusual, and without explanation would be deemed flagrantly exorbitant. But it seems to be justified by a consideration of the great labor performed and of the compensation which the parties had voluntarily given to Keating for services embracing only a part of the accounts and transactions investigated by the commissioner, though Keating reported only results, and no particulars. There was moreover no objection made to the amount of the allowance in the Circuit Court, and this Court has refused, under such circumstances, to interfere with an allowance made by the Chancellor. As for the execution, it seems to have been the only effectual mode of enforcing the order; and although the more regular and appropriate mode of enforcing incidental orders made in Chancery, is by attachment. Yet as such an order as that now in question, is in substance a decree, we are of opinion, that the Chancellor may, in his discretion, resort to the *fieri facias*, which is given by statute upon decrees, and that in this case there was no abuse of discretion.

But we are of opinion, that the Court erred in decreeing that Jones sould pay the entire amount. He was properly decreed to pay $400, allowed for making up the accounts previous to the dissolution, as to which Morehead relied upon the award of Keating as conclusive, and opposed the reference to the commissioner, which was made on the motion and for the satisfaction of Jones, who as he failed in exposing any material error in the award, should bear the expense of his unsuccessful attempt.

But as to $200, the residue of the sum allowed, this expense having been incurred on the motion and at the instigation of Morehead, in support of his unfounded and unsuccessful claim for damages, that portion of the allowance should have been charged against him. The said order and decree, is therefore reversed, with costs, and the cause, as to that matter, is remanded, with directions to make an order and decree on this subject, in conformity with this opinion, and to allow. Jones credit for any payment made under the former order.

It further appears, that an execution having issued in favor of Payne, the commissioner, and against Jones, in conformity with the order just noticed, and a sale having been made under it, a motion was made by Jones to set aside the order for an execution, and also to quash the execution and the sale bond, and this motion having been overruled, a writ of error is prosecuted by Jones against Payne for the reversal of this decision. But the only objection urged, being founded on the alledged impropriety of proceeding by execution instead of attachment, which has already been disposed of, the order overruling said motion is affirmed, with costs.

*Morehead & Reed and Hord* for Jones : *Owsley & Goodloe and Payne & Waller* for Morehead.